## McGHEE *v.* THE STATE.

1. Neither the general tax act of 1890 (Acts of 1890-1, vol. 1, p. 35), nor the fourth section thereof, is unconstitutional as referring to more than one subject-matter, or as containing matter different from what is expressed in the title of the act; nor is this act, or section, unconstitutional because of the requirements therein that taxes upon certain specified vocations be paid in advance, and that the persons liable for such taxes shall register their names and places of business before being authorized to pursue such vocations; nor because a failure to comply with these enactments is made penal. This is true although the provisions as to taxes upon vocations, registration and penalty, are not made applicable to all taxes upon vocations imposed by the act, and to all persons in this State liable for the payment thereof, and although these provisions are not made applicable to any taxes imposed upon property.

2. The charge being that the accused did engage in the business of selling and buying, " through regularly organized stock and cotton exchanges and boards of trade," various farm products and other property enumerated in the act mentioned, and the proof showing that he carried on this business in the " Rome Cotton Exchange," of which he was manager, the State was not required to show further that he placed his orders with exchanges or boards of trade elsewhere.

3. The accused having paid, partly in cash and partly by check accepted as cash by the tax-collector and paid within thirty days, the full tax required of him before commencing to do business, but having neglected for three months to register as required by law, is technically guilty of the offence charged; and though, under the circumstances, there is strong reason for the exercise of executive clemency, there is no legal ground for acquittal or for granting a new trial.

March 20, 1893.

Indictment for misdemeanor. Before Judge Turn-bull. City court of Floyd county. June term, 1892.

The charge was, that the accused, " on November 1, 1891, did engage in the business of selling and buying, through regularly organized stock and cotton exchanges and boards of trade, farm products, sugar, coffee, and salt and meat, railroad stock and bonds, and stocks and bonds of all kinds not intended for *bona fide* sale and delivery, but for future delivery (commonly called futures), without paying in full for the said fiscal year 1891, at the time of commencing to engage in said business, his tax to the tax-collector of said county, and without registering his name and place of business before the ordinary of said county." The defendant filed a demurrer, the grounds of which are shown in the opinion. After conviction he moved on the general grounds for a new trial. This motion and the demurrer having been overruled, exceptions were taken.

Dean & Smith and Dabney & Fouché, for plaintiff in error. W. J. Nunnally, solicitor-general, by Harrison & Peeples, *contra.*

Lumpkin, Justice.

1. The title of the general tax act of 1890, so far as material to the present case, is as follows: " An act to levy and collect a tax for the support of the State government; . . . to prescribe what persons, professions and property are liable to taxation; to prescribe the methods of receiving and collecting said taxes, . .

and to provide penalties and forfeitures for non-payment of taxes." The second section of this act imposes a tax upon certain dealers in farm products and other property " not intended for *bona fide* sale and delivery, but for future delivery (commonly called ' futures ')." The fourth section declares that this tax shall be paid in full at the time of commencing to do the business specified ; requires registration with the ordinary at the time the tax is paid, and makes a failure either to pay the tax or to register a misdemeanor.

We cannot see any merit in the contention of counsel for the plaintiff in error, that the provisions of this act as to registration or penalty make it violative of the constitutional inhibition against the passage of any law " which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." Code, §5067. The subject-matter of the act is taxation generally, including enactments as to what taxes shall be collected, how they shall be collected, and what penalties shall be incurred for failure to pay. The declaration in the act that certain classes of tax-payers shall register as provided, is a legitimate incident to this general subject-matter ; and so are the provisions that non-payment, in certain instances, shall subject tax-payers to penalties. We think, therefore, it is clear enough, without argument, that the act does not refer to more than one subject-matter; and this being true, a mere glance at the title, in connection with the body of the act, will suffice to show that the latter does not, so far at least as the present complaint extends, contain matter different from what is expressed in the former. We therefore dismiss this branch of the constitutional question raised, without further comment.

It is further complained that this act violates that clause of the constitution which declares that " all taxation shall be uniform upon the same class of subjects,

and *ad valorem* on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws," because, first, it requires registration and payment in advance of certain persons taxed upon their vocations, and as to these persons makes penal a failure to comply with these requirements, while it does not so require or enact as to all persons taxed upon their vocations; and second, because none of these requirements are exacted of persons paying taxes upon their property. Reversing the order of these exceptions, we will first deal with the latter.

All taxation may be divided into two general classes: taxation on property, and taxation on person, the latter including taxation on occupation. It is easy to perceive there is a wide difference between these two classes. The constitution put all property into one general class, and under its provisions as to taxing property, there must be uniformity not only in the rate, but in the substantial features of the methods of collection; and hence it was held in *Atlanta & Florida R. R. Co.* v. *Wright,* 87 *Ga.* 487, that the legislature had no power "to impose a pecuniary penalty for non-payment of taxes upon one class of tax-payers exclusively, leaving all other classes exempt from any penalty whatever," and also, that the legislature could not "subject one class of tax-payers to execution for taxes on the 1st of October, when the great mass of tax-payers are exempt until the 20th of December." It will be observed that the court was dealing with taxation *on property only,* and did not have in mind any question as to a distinction between taxation of this kind and taxation on person or occupation. It was simply determined that a railroad corporation could not be subjected to penalties for not paying taxes on its property which were not imposed on other property tax-payers, and could not be required to pay

such taxes at an earlier time than the general law required taxes on other property to be paid. We think our rulings in that case were undoubtedly sound, but they must be construed and understood with reference to the facts involved and the questions presented for decision. The " classes " of tax-payers referred to in that case were all classes of *property* tax-payers, and this court held that in all substantial· respects they must be treated alike. There is nothing in that case, or in the constitution, inconsistent with the proposition that the legislature may make certain reasonable requirements of another entirely distinct class of tax-payers. We therefore hold .that the mere failure of the act before us to subject payers of taxes on property to the provisions in question, presents no good reason for holding the act unconstitutional.

This brings us to the next objection, viz : that the act does not deal uniformly with all persons liable for taxes on their occupations. For instance, the act does not require *all* persons taxed on their occupations to register or to pay in advance, or make a failure to do so indictable. While, under the constitution, the legislature has no power to make any classification as to property subject to taxation, but must deal substantially in the same manner, as to taxes, with all kinds of property, there is nothing in that instrument which forbids the legislature from classifying persons, privileges and occupations which are to be subjected to taxation, except, perhaps, as to poll taxes, provided, of course, that " all taxation shall be uniform on the same class of subjects." Accordingly, there seems to be no constitutional reason why the legislature could not make one general class of all persons upon whose occupations it imposed taxation, and if this were done, we think it would then be incumbent on the legislature to make its system of taxation, as to such persons, uniform in all essential

particulars, so as to operate fairly and equally upon each and every member of this general class, and this class might be made to include every person engaged in any sort of business vocation. The legislature has not seen proper, however, to make a class so universal. In the first place, many occupations are not taxed at all; and secondly, those which are taxed are divided into numerous classes. Certainly, the framers of our constitution never intended that no occupation could be taxed without taxing all occupations, as, for example, that in order to tax liquor-dealers on the business pursued by them, farmers must be taxed on their business. If this were so, it would follow that they must all pay the same tax, a result which we are absolutely certain was never contemplated by even a single member of the constitutional convention. We therefore think the legislature may omit from its system of taxation on vocations many occupations altogether. It certainly does this, and in our opinion, there can be no doubt of the wisdom and propriety of such action. We think, further, that occupations which are taxed may be divided into various classes. It would not be expedient, necessary or just, to subject all occupations to the same amount of taxation, or to the same provisions as to enforcing payment. This will be obvious without entering into details. When, however, the legislature does make a distinct class, it must treat each member of it alike. It could not provide that some lawyers, some physicians, or some liquor-dealers, must register and pay their taxes in advance, and be indictable for failing to do either, and relieve other lawyers, physicians, or liquor-dealers, from these provisions. When it makes a class of lawyers, physicians, liquor-dealers, dealers in "futures," or any other class, including one or more occupations, the same provisions must be made as to each member of the class.

The act now under consideration makes a distinct and

separate class of dealers in "futures" who sell or buy through exchanges or boards of trade, and there is nothing in the act which discriminates in any particular for or against any member of this class. This being true, the act does not violate the constitution as alleged. This conclusion is inevitable, if the legislature has the right to thus classify the several occupations with which it deals. That it has this right cannot be seriously doubted; for if it has not, it would follow, as already shown, that in order to tax any occupation, all occupations must be taxed; and further, that the same amount of tax must be imposed, and the same provisions as to collection, etc., must be made in every instance. This would result in the State's deriving very little revenue from this branch of taxation, or else imposing burdens too grievous, in many instances, to be borne. Looked upon as a legislative question, some occupations ought not to be taxed at all; others should be taxed to a certain extent; and others to a still greater extent; and the requirements as to collection, etc., should in some instances be more stringent than in others. These things are manifest without elaboration, and are not difficult to accomplish within the range of the constitution by holding that it does not forbid classification as to the kinds of taxes with which we are now dealing. Such holding is easy and natural, and in accordance with it the State can have the benefit of a considerable revenue which it needs, and which every thoughtful citizen doubtless believes it ought to receive under a proper system of taxation. We therefore entertain no doubt of the correctness of our judgment in overruling the constitutional objections made to the act in question.

2. This act deals with persons engaged in selling and buying "through regularly organized stock and cotton exchanges or boards of trade," and it was contended that as the evidence showed the accused placed his or-

ders in New York and Chicago, and did not show he dealt in those places through such exchanges or boards of trade, the State had failed to make out a case. The evidence does show, however, that there was in Rome an institution known as the " Rome Cotton Exchange," of which the accused was the manager, and that he carried on therein the business referred to. This brings him, we think, within the provisions of the act. The legislature did not, we suppose, contemplate that the State would have to prove that the business in question was transacted through such exchanges and boards in distant cities. The accused, it seems, agreed with this court and the legislature in this view, for he recognized the applicability of the act to himself and his business by paying the tax and also registering, the only difficulty being that he deferred the latter so long that he became guilty of violating the law.

3. The failure to register when he paid the tax being penal as well as the failure to pay when he began business, the accused was certainly guilty; but as the most important thing was paying the thousand dollars, which was done in time, we think the guilt was only technical, and the circumstances present very strong grounds for executive clemency. The conviction, however, being in all respects legal, we have no power to grant a new trial or to order an acquittal. *Judgment affirmed.*