THE SINGER MANUFACTURING COMPANY *v.* WRIGHT.
THE SAME *v.* THOMAS *et al.*

1. It is within the constitutional power of the General Assembly of this State, in the imposition of specific taxes upon occupations, to classify the subjects of taxation, taxing some and omitting to tax others; and the principle of uniformity required by par. 1, sec. 2, art. 7 of the constitution, is not violated so long as a given tax is made uniform upon all individuals belonging to the particular class on which it is imposed.

2. A specific tax levied under a statute of this State upon persons engaged in the conduct of a particular business is not violative of par. 3, sec. 8, art. 1 of the constitution of the United States, as being an interference on the part of the State with commerce between the several States, where the property employed in such business has been brought into this State and has itself become subject to taxation therein. Nor is such a tax obnoxious to the 14th amendment to the Federal constitution, as denying to any person "the equal protection of the laws," where all persons of a given class, designated and described by the special occupation in which they engage, are subjected to the same specific tax, and the individual complaining falls within the class upon which such tax is imposed.

3. The law in question being constitutional, and the taxes there-
by imposed being legal, the judgments below were right, irre-
spective of the question whether the plea of *res adjudicata*
was, or was not, well founded in law.

July 15, 1895.

Complaint.   Before Judge Lumpkin.   Fulton superior
court.   March term, 1894.

*George Hillyer*, for plaintiffs.

*J. M. Terrell, attorney-general, Dorsey, Brewster &
Howell* and *C. S. Winn*, for defendants.

LUMPKIN, Justice.

These two actions were, by consent, consolidated and
tried together as one case by the presiding judge without a
jury.   They were brought to recover amounts of money
paid at different times by the plaintiff in error, for the pur-
pose of preventing a sale of its goods under executions
which had been issued for certain taxes alleged to be due
the State of Georgia.   The payments were made under
protest, and the sewing-machine company insists that the
law under which these taxes were levied is unconstitutional,
(1) because in conflict with par. 1 of sec. 2 of art. 7 of the
constitution of Georgia (Code, §5181), which provides that:
"All taxation shall be uniform upon the same class of sub-
jects, and *ad valorem* on all property subject to be taxed
within the territorial limits of the authority levying the tax,
and shall be levied and collected under general laws;" (2)
because in conflict with clause 3 of sec. 8 of art. 1 of the
constitution of the United States, familiarly known as the
"interstate commerce clause"; and (3) because violative
of the 14th amendment of that constitution, which forbids
any State from denying to any person within its jurisdiction
the equal protection of the laws.

The particular language of the statute thus called in
question is to be found in par. 17 of sec. 2. of the general
tax act of 1886, and is in the following words: "Upon
every sewing-machine company selling or dealing in sewing-

machines, by itself or its agents, in this State, and upon all wholesale dealers in sewing-machines selling sewing-machines manufactured by companies that have not paid the tax herein required, two hundred dollars for each fiscal year or fractional part thereof, to be paid to the comptroller-general at the time of commencement of business; and in addition to the above amount, said companies or wholesale dealers shall furnish the comptroller-general a list of all agents authorized to sell machines, and shall pay to said comptroller-general the sum of ten dollars for each of their agents, in each county, for each fiscal year or fractional part thereof, and upon the payment of said sum, the comptroller-general shall issue to each of said agents a certificate of authority to transact business in this State." Acts of 1886, pp. 16, 17.

1. There is no longer any ground for questioning, in this State, the constitutional power of the General Assembly, in the imposition of specific taxes upon occupations, to classify the subjects of taxation, taxing some and omitting to tax others; or, for asserting that the "uniformity clause" in the article of our constitution which relates to taxation is violated, so long as a given tax is made uniform upon all individuals belonging to the particular class on which it is imposed.

In *Mayor and Aldermen of Savannah* v. *Weed*, 84 *Ga.* 683, it was held flatly that the General Assembly could classify all subjects of taxation, exclusive of property, and tax all classes at a rate operating uniformly upon each of its members; and the conclusion reached by the court is well supported by the opinion delivered by the present Chief Justice. The rule as to the taxation of property is stated in *Wells* against the same municipality, in 87 *Ga.* 400, and recognized in *Atlanta & Florida Railroad Co.* v. *Wright*, *Ib.* 487. The question of the authority of the General Assembly to classify and tax business occupations was also involved in the case of *Weaver* v. *The State*, 89 *Ga.* 639,

and the following language quoted from the opinion, and to be found on page 642, is pertinent and applicable to the point now under consideration: "It is too well settled to require discussion, that a tax upon a business or occupation is not a tax upon property within the meaning of the *ad valorem* and uniformity clause of the constitution. And it is not a valid objection that another business or occupation is not taxed, or is taxed a different amount. The requirement as to this kind of taxation is that it shall be uniform upon all business of the same class." In *McGhee* v. *The State*, 92 *Ga.* 21, the distinction between the taxing powers of the General Assembly over property and other subjects of taxation, is pointed out, the reason for this distinction stated, the doctrine of the *Weed* case, *supra* (though it is not cited), practically reaffirmed, and the extent of its operation still further illustrated. For instance, it is there said (page 26): "We think, further, that occupations which are taxed may be divided into various classes," and this is true upon principle and as a sequence from the reasoning of the previously adjudicated cases. It would therefore seem to be established that it is not only within the power of the General Assembly to make one general class of all persons engaged in manufacturing or dealing in sewing-machines, for the purpose of taxing them upon their occupations, but it may constitutionally make for this purpose a more limited class, composed of persons engaged in the sewing-machine business and consisting of those transacting such business in specified or particular ways. The General Assembly can tax the occupations of all persons engaged in the liquor traffic; but, if it saw proper, it could undoubtedly impose an occupation tax upon those only who sold liquors at wholesale. So, it may impose an occupation tax upon persons engaged in the sewing-machine business, without being constrained to make the tax universal in its operation upon all persons engaged in all branches of that business. We understand the words, "sewing-machine company," as used

in the statute now under consideration, to mean a company which manufactures sewing-machines; and therefore, in the present instance, the General Assembly has made a class consisting of manufacturers of sewing-machines who sell by wholesale or by retail, and of wholesale dealers selling machines manufactured by companies that have not paid the tax required by the law in question. Thus, manufacturers and certain wholesale dealers are put in the same class. This is a natural and reasonable classification. Companies engaged in selling their own machines at retail, through various agents, doubtless do a very large business, and are, therefore, reasonably classified with wholesale dealers.

The plaintiff contends that the tax is not uniform, because no tax is required of retailers of machines who are not manufacturers. This contention, in view of what has already been said, cannot be sound; for, if the right to classify at all is conceded (and we have shown it must be), even an arbitrary classification would not, for that reason alone, be unconstitutional. But, as just intimated, we do not wish to be understood as saying that the classification made in this instance is arbitrary or unreasonable. It was not necessary to the legality or fairness of the tax that all retailers of machines should be included and required to pay the same amount. The General Assembly might well deem it in accord with a sound public policy to encourage the small dealer in his initial efforts to build up a business, by exempting him from a tax he could ill afford to pay, and taxing others in the same line of trade, but doing a business the volume of which warranted the additional burden of an occupation tax.

Whenever the small dealer by reason of success became a wholesaler, he would, of course, become liable to taxation as a member of the class to which he would then belong.

The most serious question for determination as to the constitutionality of the law in hand, in view of the "uniformity clause" above mentioned, is this: Is its lan-

guage sufficiently comprehensive in meaning to embrace all manufacturers of sewing-machines who sell at retail? Unless it is, the law must fail; because, when once a class is established, every member properly belonging to that class must be taxed, or else the uniformity required is destroyed. If the words, "every sewing-machine company," are applicable only to corporations or partnerships, then individuals manufacturing and selling sewing-machines would not be reached. It may be true, in point of fact, that there are no single individuals in Georgia answering to this description; but the law should be broad enough in its terms to include any person who may at any time, upon his own account, enter upon such business; for otherwise, it would be possible for an individual to begin the transaction of this very business and escape a tax which corporations in the same business are compelled to pay. An omission of this kind in a taxing law might, in some instances, operate as an invitation to individuals to undertake business enterprises, because of an attendant non-liability for taxes and a consequent advantage to be gained over competitors engaged in the same business who are specifically named and taxed. At any rate, such an omission makes a discrimination which the constitution forbids. We think, however, that so far as the law with which we are now dealing is concerned, the whole difficulty may be properly removed by simply holding that the words, "every sewing-machine company," would apply to a sewing-machine "man" who undertook to engage in the manufacture and sale of such machines in this State. This construction, upon reflection, will be found not to be a strained or unreasonable one. On the contrary, we think it is entirely permissible, when reference is had to the object of the law in question; that object being, not to tax a company or person carrying on the business, *but the business itself.* Of course, if the tax be upon the business, it is entirely immaterial whether such business be carried on by an individual, a partnership, or a corpora-

tion. As has been seen, the power of the legislature extends only to classifying business occupations into different branches, and laying upon each separate branch thus created such a tax as is deemed proper. The legislature has absolutely no power to classify *persons*, natural or artificial, engaged in precisely the same occupation, laying a tax upon some of them and exempting others, or imposing a tax not operating uniformly upon all. Therefore it would certainly seem the most natural and reasonable inference that the General Assembly, in passing the law in question, attempted to accomplish what it had an undoubted right to do, rather than that which the constitution expressly forbids. It should be the purpose of courts to give effect to legislative intention; and where that intention is not perfectly clear, the unbending rule is that such a reasonable construction of the statute as will render it harmonious with constitutional restrictions should invariably be adopted. In the present instance, we are quite sure the legislature intended that this tax should apply to the business in question, no matter by whom the same might be conducted. Literally, the word "company" could only mean a corporation or a partnership; but a literal construction is not demanded, and a few illustrations, taken from our legislative enactments on the subject of taxation, will show that this word "company" has often been used therein, not only loosely, but in a sense which renders it perfectly evident it was intended to embrace single individuals. Thus, in the tax acts of 1886, 1888, 1890, 1892 and 1894, taxes were imposed upon telephone, circus, brewing, and sewing-machine companies. It can hardly be doubted that in some, at least, of these several instances, the legislature unquestionably intended that the tax should be imposed upon the *business* designated, even though conducted by an individual. For instance, if Adam Forepaugh exhibited in this State his great circus and menagerie of which he was the sole owner and proprietor, although he was not literally

a "circus company," it would surely not be denied that he would be subject to the tax imposed on such companies. Again, if a single individual had sufficient capital to establish and conduct a brewery, he would in like manner have to pay the tax imposed on brewing companies, although, strictly speaking, not himself a company. These illustrations might be further extended, but it is deemed unnecessary. It is quite probable that our General Assembly did not, in express terms, impose a tax on single persons who might engage in the sewing-machine business, for the reason that, in point of fact, none such were then engaged in conducting the business in this State exclusively upon their own account. But however this may be, we think, in view of what has above been said, the law would reach such a person, if one could be found carrying on the business in question. While, as a general rule, tax laws must be strictly construed as to their operation upon those to be thereby affected, it will not do in every instance to confine words to their literal and ordinary signification. Certainly, if so doing would render a statute unconstitutional, the court should extend the letter so as to save the statute, if possible, the presumption always being in favor of its constitutionality. "Statutes relating to taxation. . . are to be so construed as to carry into effect the obvious intent of the legislature, rather than to defeat that intent by a too strict adherence to the letter." Cornwall *v.* Todd, 38 Conn. 443. So, likewise, it was said in Big Black Creek Improvement Co. *v.* Commonwealth, 94 Pa. St. 450: "Statutes are to be construed so as may best effectuate the intention of the makers, which sometimes may be collected from the cause or occasion of passing the statute, and where discovered it ought to be followed with judgment and discretion in the construction, though the construction may seem contrary to the letter of the statute." A clause in the general incorporation law of the State of Illinois provided that no city council should grant the right to lay down rail-

way tracks in any street of a city to any steam or horse rail-
way company, except upon certain conditions; and it was
held that the word "company," as employed in that clause,
embraced natural persons as well as corporations. Chicago
Dock Co. v. Garrity et al., 115 Ill. 155. Mr. Justice Schol-
field, in delivering the opinion of the court, said (page 164):
"It is very clear that 'natural persons' are here within the
intention, although not within the letter, of the act; for the
injury against which protection is intended to be afforded is
the laying of railway tracks in the streets. By whom the
tracks shall be laid and the cars thereon operated is, mani-
festly, of no consequence whatever. The same result, in
all respects, will follow the laying of railway tracks in the
streets and operating cars thereon by individuals, as will
follow the laying of them by corporations. The use of the
word 'company,' we have no doubt, was simply because such
tracks are almost always laid and operated by companies.
The clause should be read as including both corporations
and individuals." The language just quoted will, upon a
very casual consideration, be found, in principle, precisely
applicable to our present question. We are, therefore, of the
opinion that the law imposing the tax complained of is not
violative of the "uniformity clause" of the article of the
constitution of this State relating to taxation.

2. Another objection to this law was, that it was violative
of the "interstate commerce clause" of the Federal con-
stitution. We think otherwise. While it is exclusively
the province of Congress to regulate commerce between the
several States, and to protect the same from hostile State
legislation, yet, when products are shipped from one State
and lodged in another, there to be offered for sale in open
market, the business of selling them there is no longer inter-
state commerce, but assumes a domestic character and be-
comes subject to the laws of taxation of force in the State
where such business is pursued. The property involved in
the conduct of this business, having become intermingled

with the general mass of property in the State, has itself become subject to taxation there; and, upon principle, the business of selling it is alike taxable in that jurisdiction. This conclusion is deducible from the decision of the Supreme Court of the United States in Brown *et al. v. Houston et al.*, 114 U. S. 622. It is true that where property has been shipped from one State to be sold in another, the business of conducting sales of it would be protected from local legislation burdening it with a tax not imposed upon the same business carried on in articles produced within the State levying the tax. But our statute makes no discrimination whatever as to the business of sewing-machine companies, with reference to the question whether or not the machines sold are manufactured within this State or elsewhere.

The general tax act of 1890 with reference to the sewing-machine business is quite similar to that of 1886 on this subject, except that the language employed in the act of 1890 expressly includes within the class of persons subject to the tax "all wholesale and *retail* dealers in sewing-machines, selling machines manufactured," etc. In the case of *Weaver* v. *The State, supra,* that act was attacked as being in conflict with the Federal constitution, "because it is an attempt to discriminate against the productions of other States," concerning which this court said: "The tax is imposed upon the business of selling or dealing in sewing-machines in this State, irrespective of the State or country in which the machines are manufactured;" and accordingly held that the act was not unconstitutional in the respect indicated, citing Singer Manufacturing Co. *v.* Wright, comptroller-general, 33 Fed. Rep. 124, where the same question now in controversy under our tax act of 1886 was involved.

In concluding our discussion as to the paragraph of that act upon the construction and constitutionality of which the present case turns, we need only add, that if it is not in

conflict with the constitution of this State or with the "interstate commerce clause" of the constitution of the United States, it necessarily follows that this law is not obnoxious to the 14th amendment to the Federal constitution, which forbids denying to any person "the equal protection of the laws;" for, except as above indicated, no reason was urged or suggested why it was not in complete harmony with that amendment.

3. Another interesting and important question was made in this case, upon which, however, we do not deem it essential to pass. The defendants below filed a plea alleging that, in a case between the same parties as are now before the court, it had been finally adjudicated by the Supreme Court of the United States that the Singer Manufacturing Company was liable for the very taxes now made the subject-matter of controversy. Having reached the conclusion that, irrespective of any former adjudication in that case the sewing-machine company was liable for the taxes imposed upon it, it is obviously unnecessary to determine whether the plea of *res adjudicata* was, or was not, well founded in law.                    *Judgment affirmed.*