## SMITH *v.* THE STATE.

A brewing company which paid to the State a tax of $200 for the year 1897 did not, by establishing in a county other than that in which its plant was located an agency for the sale of beer manufactured by it and selling thereat such beer during that year, become liable to the State for any additional tax; nor was its employee in charge of such agency subject to State taxation for that year as a dealer in beer.

Argued October 4, — Decided November 8, 1899.

Certiorari. Before Judge Smith. Irwin superior court. June 30, 1899.

*D. B. Jay* and *Estes & Jones,* for plaintiff in error.
*J. F. DeLacy, solicitor-general,* and *W. F. Way,* contra.

LUMPKIN, P. J.    This case presents for decision here but one question, viz.:  Did a brewing company, by making to the State, in 1897, a single payment of $200, acquire, so far as related to the tax imposed upon "brewing companies" by the 23d paragraph of the 2d section of the general tax act for 1897 and 1898, approved December 24, 1896, the right to establish in a county other than that in which its plant was located an agency for the sale of its product and engage thereat, during the year 1897, in selling beer of its own manufacture?   We have reached the conclusion that this question should be answered in the affirmative.   The paragraph above referred to reads as follows:  "Upon all brewing companies, two hundred dollars, and upon all others who are engaged in the sale of beer, whether on consignment or otherwise, who have not paid the tax as liquor-dealers imposed by paragraph fifteen (15) of this section, in each county where they carry on business, two hundred dollars."   See Acts of 1896, p. 26.   The legislative design evidenced by the language just quoted was to divide dealers in beer into two general classes, and impose upon each member of one class a single tax of $200, and upon each member of the other a like tax for each county in which such member engaged in selling beer.   The first of these classes included all persons who both manufactured and sold beer, and the second class embraced all other sellers of beer who did not pay the

tax of $150 imposed upon liquor-dealers by the 15th paragraph of the same section of the act in question. We say the first class included all "persons" who both made and sold beer, because the words "brewing companies" were evidently intended to cover not only corporations and partnerships, but also individuals engaged in the business of brewing and selling beer. See *Singer Manufacturing Company* v. *Wright,* 97 *Ga.* 114. And we say this class included all who "both manufactured and sold" beer, for otherwise the word "others," in the phrase "all others who engage in the *sale* of beer," would be totally without significance. It follows, we think, as an inevitable conclusion, that the General Assembly did not undertake to impose upon "brewing companies," merely as manufacturers, a tax of $200 each, but that it was intended to deal with these concerns as "manufacturing-sellers," if we may use this term to express the exact idea we wish to convey. In other words, a specific license tax was imposed upon the *business* carried on by brewing companies, a necessary incident of which is, of course, the selling of the product which such companies usually manufacture.

The authority of the General Assembly to classify objects of taxation, if the same be done reasonably, is well settled. See *Singer Manufacturing Co.* v. *Wright,* supra, and cases therein cited. We are unable to say that the classification above pointed out was either unreasonable or arbitrary; and, giving to the words employed their plain and ordinary meaning, we are forced to hold that a brewing company which paid the State tax of $200 for 1897 was not obliged to pay to the State an additional sum of $200 for each county in which it did business. It is worthy of notice that in the very act now under review the legislature was, whenever it desired to impose a tax for "each county" or "each place of business," careful to say so. For instance, it is expressly provided in par. 3, sec. 2, that the tax imposed upon photographers "shall be required of them in only one county;" while, on the other hand, as to the tax upon "each agent or firm negotiating loans," the same paragraph expressly declares that this tax is imposed "in each county in which they carry on business." The 4th paragraph

contains a like provision as to the tax upon auctioneers; paragraph 5 imposes upon the keeper of a billiard hall a tax "for each table" used in conducting the business, while the following paragraph, which lays a tax upon the proprietors of certain other places of public amusement, provides in terms that such tax shall be paid "in each county." The keeper of a tenpin alley is taxed "for each place of business" (par. 7); vendors of proprietary medicines, soap, etc., must pay a license tax "in each county where they may offer such articles for sale" (par 8); local insurance agents are taxed "ten dollars for each county in which they shall solicit business," whereas a "traveling or special or general agent" of an insurance company "doing business in this State" is at liberty to solicit business anywhere within its limits, upon payment by his company of a general tax of fifty dollars (par. 9). An examination of the succeeding paragraphs of this section will likewise show that the General Assembly evidently had under consideration the expediency, in given instances, of levying a tax for each county, for each town or city, or for the whole territory of the State generally, and took especial pains to expressly prescribe the precise locality which each particular license tax should refer to and cover. Manifestly it was not contemplated that every line of business made the subject of taxation should, when carried on in more than one county, be liable to taxation for each county wherein the business was conducted. For illustration, while it is a well-known fact that practitioners of law or medicine do not usually confine their practice to the county in which they reside, yet, in the act under review, no attempt was made to tax such practitioners upon the basis of the number of counties in which they did business, but a general tax of ten dollars was imposed upon each practicing attorney and upon each practitioner of medicine, without regard to the locality or the extent of the territory wherein the professional zeal of such attorney or practicing physician might be exercised. See par. 2 of sec. 2.

If the brewing company, by making a single payment of $200 to the State, was, so far as relates to the question now in hand, entitled to sell its beer in any county of the State, it fol-

lows, of course, that its mere. agent or servant was protected from the payment of the $200 tax. See 11 Am. & Eng. Enc. L. (1st ed.) 646, and Black on Intox. Liquors, § 132. We do not think the language of the paragraph of the act of 1896 now under consideration will bear the construction that a brewing company, upon paying the $200, could sell at its plant only, and that if it sold elsewhere, either in the county of its location or in. some other county, it would lose its distinctive character as a brewing company and fall within the class described by the words "others who are engaged in the sale of beer." A brewing company which also sells is a brewing company of this character at home and abroad, and can not be properly designated as something other than such a company, no matter where it does business. It may be that it did not occur to the legislative mind that a brewing company would sell elsewhere than at its plant or in the city or town of its situs, and that consequently the tax law was not framed with reference to such a contingency. Be this as it may, we have no alternative but to enforce the law as it is written, and in so doing we are constrained to adjudge that the conviction of the plaintiff in error was unlawful and must be. set aside.

*Judgment reversed.    All the Justices concurring.*