FULTON COUNTY *et al. v.* LOCKHART *et al.*

No. 15955.   OCTOBER 16, 1947.   ADHERED TO ON REHEARING
NOVEMBER 10, 1947.

*Ralph H. Pharr, W. S. Northcutt,* and *Durwood T. Pye,* for plaintiffs in error.

*James D. Childs* and *Harold Sheats,* contra.

JENKINS, Chief Justice. ■ The contention of Fulton County that it had specific constitutional authority to classify and exact an occupational tax upon the persons of the plaintiffs, by reason of an amendment to the Constitution of 1877 (Ga. L. 1945, p. 101), which was ratified and proclaimed on the same dates as was the new Constitution of 1945, is controlled adversely to the county by the rulings of this court in *Wheeler* v. *Trustees of Fargo School Dist.,* 200 *Ga.* 323 (37 S. E. 2d, 322), and in *Alexander* v. *Fulton County,* 201 *Ga.* 857 (41 S. E. 2d, 423). In the *Wheeler* case this court, in passing upon the validity of the new Constitution, said: "We must determine whether or not we are dealing with an amendment to the Constitution of 1877. The General Assembly in the resolution (Ga. L. 1945), supra, calls it in the first instance 'one single amendment,' and in the very last words of the same resolution 'the revised Constitution of Georgia.' We find the following definitions in 3 Words and Phrases, p. 319: 'Amendment of a statute implies its survival and not destruction. It repeals or changes some provision, or adds something thereto. . . A law is amended when it is in whole or in part permitted to remain, and something is added to or taken from it, or it is in some way changed or altered to make it more complete or perfect, or to fit it the better to accomplish the object or purpose for which it was made, or some other object or purpose.' In Ellingham *v.* Dye, 178 Ind. 336 (99 N. E. 1, Ann. Cas. 1915 C, 200), a completely revised Constitution was proposed by the General Assembly in a manner very similar to what was done in Georgia in the instant case. The court there held that instrument not to be a single amendment, but a completely revised or new Constitution. It seems to us that the instrument now under consideration discloses by its own terms the answer to the question we now have for determination. The very first paragraph repeals in its entirety the Constitution of 1877, and then proceeds to create a new Constitution. When a house is completely demolished and another is erected on the same location, do you have a changed, repaired and altered house, or do you have a new house? Some of the material contained in the old house may be used again, some of the rooms may be constructed the same, but this does not alter the

fact that you have altogether another or a new house. We conclude that the instrument as contained in Ga. L. 1945, pp. 8 to 89, inclusive, is not an amendment to the Constitution of 1877; but on the contrary it is a completely revised or new Constitution. We will hereafter refer to the instrument as the Constitution of 1945." In the *Alexander* case, supra, in ruling upon the legal effect of a constitutional amendment which was, just as the amendment here considered, ratified and proclaimed on the same dates as was the new Constitution of 1945, this court said: "The local Fulton County amendment here involved cannot be given effect as being of itself a new Constitution of the State of Georgia. If effective at all, it manifestly must operate as a constitutional amendment. As we construe together the new Constitution of 1945 and the simultaneous local amendment to the Constitution of 1877, the local amendment cannot be preserved as a valid continuing amendment to the Constitution of 1877 . . for the reason that, at the very time it was ratified by the people, the old Constitution and all of its amendments, except as otherwise expressly provided, vanished into thin air. There was nothing left to which the amendment, as an amendment, could adhere. See *Lampkin* v. *Pike,* 115 *Ga.* 827 (1) (42 S. E. 213, 90 Am. St. R. 153). If born at all, it was still-born. Had the local amendment already become a part of the Constitution of 1877, that is, had it been 'in effect at the date of the ratification by the voters of the State' of the new Constitution, a different rule would obtain under the provision of the new Constitution above quoted. Nor can the local amendment be given effect by being treated as a direct amendment to the Constitution of 1945. This is true for the reason that the amendment does not purport to be and was not ratified as an amendment to the new Constitution, but plainly and in terms sought to amend the Constitution of 1877 [that is, by a named article, paragraph, and section of the Constitution of 1877 which was the only Constitution then in force]. Both the local amendment to the Constitution of 1877 and the new Constitution of 1945 were simultaneously submitted to the people, without it being possible to know which, if either, would be ratified by the people. Both were in fact ratified. Had the new Constitution failed, the amendment to the old Constitution would undoubtedly have become effective as an amendment to the old Constitution, and this illustrates the point that, since the new Constitution did not fail, but abolished the old Constitu-

tion which the amendment sought to alter, the amendment, like the old Constitution, must give way to the all-inclusive new Constitution. We say all-inclusive because such local amendments as were already in effect when the new Constitution was ratified were by the terms of the new Constitution brought forward as a part thereof. Construing the two together, that is, the local amendment to the Constitution of 1877 and the new Constitution of 1945, it will be seen that, while the local amendment takes no cognizance whatever of the new Constitution, the new Constitution speaks for itself, and by its terms expressly nullifies and excludes all amendments to the old Constitution save and except such local amendments as were already in effect at the date the new Constitution was ratified. Therefore it would seem unnecessary to deal with the legal principles involved in the construction of contemporaneous but contradictory documents or laws, since it appears that the proper construction has already been made for us by the new Constitution itself, which by its own terms seeks to be altogether comprehensive in scope, save and except as to local amendments to the old Constitution *already in effect,* and these are specifically brought forward as a part of the new Constitution. It cannot reasonably be said that the local amendment was 'in effect' at the time the new Constitution was ratified by the people. Where simultaneous action is taken, neither precedes the other, and neither action is 'in effect' when the other is consummated. It seems, therefore, that any new simultaneous constitutional provision not embodied in the all-inclusive new Constitution, but depending for its validity as being made a part of the old Constitution, stood the risk of falling upon the ratification of the new Constitution, which destroyed the old and all of its amendments, except such as were specifically brought forward as a part of the new." Since, under the rulings in both the *Wheeler* case and the *Alexander* case, supra, the instant amendment to the Constitution of 1877 never became operative, and since it is upon this amendment alone that the county relies for specific constitutional authority to impose the license tax here complained of, it follows that the county has no specific constitutional authority so to do.

The constitutional amendment which authorized Fulton County through its proper authorities to classify businesses located outside the corporate limits of municipalities and to levy a license

tax thereon, not having been operative for the reasons set forth in the first division of this opinion; the remaining question is whether the act of the General Assembly (Ga. L. 1947, p. 704), which undertakes to convey the identical authority is unconstitutional, as contended by the plaintiffs. It is true that in many instances where the legislature has first brought within the *police power* of the State the subjects of particular businesses for police regulation, such as dance halls, beer parlors, amusement places, wrestling arenas, tourist camps, etc., counties and municipalities may thereafter regulate such businesses and as an incident thereto require the payment of a license fee. However, in the instant case the statute before us does not purport to be and cannot be said to be in the exercise of the police power of the State, but is purely and simply an effort on the part of the General Assembly to delegate to the county the authority to classify for taxation any and all businesses conducted within the county outside of municipalities for the purpose of levying a tax thereon as a general revenue measure. We will pretermit any discussion or any ruling on the question as to whether or not the instant act of the General Assembly is an authorized delegation of its own specific constitutional authority to classify businesses for the purpose of taxation, and confine the ruling here made to the one question presented as to whether or not the instant act is invalid as being violative of the uniform-taxation requirement of the Constitution of 1945. The old uniformity provision as embodied in the Constitution of 1877, art. VII, sec. II, par. I (Code, § 2-5001) is as follows: "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws. The General Assembly may, however, impose a tax upon such domestic animals as from their nature and habits are destructive of other property." The new provision requiring uniformity of taxation as embodied in the Constitution of 1945, art. VII, sec. I, par. III (Code, Ann. Supp., § 2-5403) is as follows: "All taxes shall be levied and collected under general laws and for public purposes only. All taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. Classes of subjects for taxation of property shall consist of tangible property and one or more classes of intangible personal property including

money. The General Assembly shall have the power to classify property including money for taxation, and to adopt different rates and different methods for different classes of such property." It was many times in effect held, in construing the language of the old Constitution, that a tax levied upon occupations is not a tax upon property within the ad valorem and uniformity clause of that instrument, and that therefore the levy of occupational taxes was not subject to the uniformity rule, other than the requirement that all taxes must be uniform upon the same class of subjects. See *Wright* v. *Hirsch,* 155 *Ga.* 229, 233 (2) (116 S. E. 795), and cases cited. In the determination of the instant case, however, it will be assumed, for the purpose of the decision now made, that the contention of the plaintiff in error is correct with respect to there being no material change effected by the new Constitution in this respect. Nor will any consideration be given as to what, if any, new limitation is imposed with respect to the power to classify occupations for taxation by the language of the new Constitution. Nor will any consideration be given to, or any decision made as to, whether or not the authority is illegal as violative of the uniformity clause for the reason that the revenue proposed to be raised from a particular territorial portion of the county is made to go into the general county treasury for the benefit of the entire county. The sole and only ruling we propose to make is that, even under the decisions of this court made while the old Constitution was in effect (*a fortiori* when applied to the new Constitution), the statute in question violates the uniformity mandate by virtue of an illegal classification. The contention of the plaintiff in error is that the General Assembly by the "act in question creates two classes: (1) occupations pursued within that part of Fulton County lying within incorporated cities and towns; and (2) occupations pursued within that part of Fulton County not in incorporated territory." In our opinion a delegation of legislative authority to county authorities to classify and tax occupations, which is restricted in its exercise by the above classification is invalid as violative of the present uniformity provision of the Constitution, and would have also been invalid under the rulings of this court relied on by the plaintiff in error construing the old Constitution.

It is true that this court has held in *Wright* v. *Hirsch,* 155 *Ga.* 229 (2 c), by a divided court that, "Under the above provision

of the Constitution, the legislature can put dealers in cigars in incorporated towns and cities in a class and impose upon the members of such class an occupation tax, graduated according to the population of the towns and cities in which such dealers do business; and when the same tax is imposed upon each member of each class in every incorporated town and city in the State, and the method of its enforcement is the same, the uniformity required by the above provision of the Constitution is secured." Such a classification being held as reasonable and not arbitrary (see also *Guerry* v. *Harrison,* 178 *Ga.* 669, 173 S. E. 831), the Supreme Court refused to invalidate the levies for a lack of required uniformity. There were two dissents to the decision in the *Wright* case, on the theory that such a "classification is purely territorial and amounts to no classification within the meaning of the Constitution." The majority opinion, however, meeting this argument had this to say, "The flaw in the contention of the plaintiffs, and the vice in the reasoning upon which they base their contention, are that they assume that the classification is a territorial one, when in fact it is a classification of cigar dealers for the purpose of levying occupation taxes. This classification is not one of territory. It is one of cigar dealers. It is one of persons. It is one of subjects of taxation. A typical case of territorial classification would be made, if the legislature should impose an occupation tax upon cigar dealers in north Georgia and exempt cigar dealers from the tax in south Georgia, or impose an occupation tax upon these dealers in Chatham County, and exempt all dealers in other counties of the State. So we are of the opinion that these provisions of the tax act of 1921 do not violate the provision of the State Constitution which provides for uniformity in taxation upon the same class of subjects. Whenever a classification for occupation taxes, whatever may be its basis, is reasonable and the tax imposed upon all persons falling within such class is the same, the uniformity demanded by our Constitution is secured."

The reasoning in the case just mentioned is illuminated by what was said by this court in *Singer Mfg. Co.* v. *Wright,* 97 *Ga.* 114, 117 (25 S. E. 249, 35 L. R. A. 497), where in dealing generally with the legislative right to classify business occupations, the following language was used: "It would therefore seem to be established that it is not only within the power of the General Assembly to make one general class of all persons engaged in manufacturing

or dealing in sewing-machines, for the purpose of taxing them upon their occupations, but it may constitutionally make for this purpose a more limited class, composed of persons engaged in the sewing-machine business and consisting of those transacting such business in specified or particular ways. The General Assembly can tax the occupations of all persons engaged in the liquor traffic; but, if it saw proper, it could undoubtedly impose an occupation tax upon those only who sold liquors at wholesale. So, it may impose an occupation tax upon persons engaged in the sewing-machine business, without being constrained to make the tax universal in its operation upon all persons engaged in all branches of that business." In a more specific statement of the rule respecting the legislative right to classify, the court on page 120 of this same case, expressed itself as follows: "The power of the legislature extends only to classifying business occupations into different branches and laying upon each separate branch thus created such a tax as is deemed proper." This statement of the rule is in accord with all authorities cited to us and others which we have ourselves examined, which recognize that the legislative right to classify is nothing more or less than authority to discriminate in taxation by the process of making separate classes of different occupations, or by making different classes within a specific occupation, with the only restraint upon the power thus to classify being that it be reasonable and not arbitrary, and the only requirement of the uniformity clause of the Constitution being that the tax operate uniformly upon the members of the separate classes.

Doubtless it is true, as said in *McGhee* v. *State,* 92 *Ga.* 21, 25 (17 S. E. 276), that the legislature could levy an occupation tax upon *all* occupations, so that any person engaged in any occupation would come within the limits of such a provision. If it should do this, the decision goes on to say, "it would then be incumbent on the legislature to make its system of taxation, as to such persons, uniform in all essential particulars, so as to operate fairly and equally upon each and every member of this general class, and this class might be made to include every person engaged in any sort of business vocation." This is true for the reason that such a levy, in the absence of any further classification, would not create separate classes of occupations, or separate classes within a specific occupation, and there could therefore exist no basis for discrimination between the members of all occupations. It might also be

said that the legislature could levy a uniform tax on *persons,* as distinguished from persons engaged in specific occupations, but such a tax would on its face constitute a poll tax, and not an occupation tax at all. In the instant case, the legislature has authorized the levy of a tax upon all business occupations in counties of the State which now have or may hereafter have populations of 300,000 or more. Had the legislature done no more, such a tax would necessarily have had to operate uniformly upon all business occupations located in such counties. The legislature sought to do more than that, however; it delegated its right to make such reasonable classifications as might be necessary, under the circumstances of the particular occupations, to the fiscal authorities of such counties. Had the legislature stopped even there, the tax levied by the county upon the separate classes it may have created would have operated uniformly upon such classes within the territorial limits of the county as a whole. Yet the legislature did not stop there, it went still further and restricted the right to classify occupations so that such right could be exercised only in unincorporated areas of the county; and even if the legislature could delegate its legislative function to a county, it could do so only for its exercise throughout the territorial limits of the county as a whole. Anything less would violate the uniformity clause of the Constitution. To deny a county the right to operate impartially on all its citizens, and require it to tax only a portion thereof, is unreasonable and arbitrary. Therefore, conceding everything else for the purpose of argument, the county would have had to have the right specifically to classify every occupation within the county, even though, as an integral part of such authority, it might also have the right to refrain from taxing certain persons (i. e., those doing business in cities and towns). Otherwise, uniformity is lacking and equal protection and due process denied.

But even if it could be said, as contended by counsel for the plaintiff in error, that the limitation upon the right to exercise the power of classification to unincorporated areas of a county constituted in itself a legislative classification of all businesses into incorporated and unincorporated areas, even then such attempted legislative classification would be invalid, for the reason that it is clearly territorial in that it undertakes to classify, not specific businesses, but *all* businesses of whatever kind or character, ac-

cording only to whether they operate inside or outside incorporated towns or cities. It has not classified a particular business at all. It is therefore impossible to determine, as was determined in the *Wright* v. *Hirsch* and the *Guerry* v. *Harrison* cases, whether such a classification is reasonable or not. Under the *Hirsch* decision, a classification of a particular business might or might not be. What was said in the majority opinion of that case, to wit, that the classification there was *not territorial* (as the minority opinion considered it to be), cannot possibly be said to be true in this case. Such constitutes the only classification there is. The county authorities are bound at the outset to keep hands off *all* businesses lying within incorporated areas. Specific businesses (such as are dealt with in all of the cases cited by counsel for the plaintiff in error) are not even mentioned here; and the court said in *Wright* v. *Hirsch* that it was only because the classification dealt with a specific occupation that such classification was not purely territorial in character, and therefore invalid. Here the classification relied on to uphold the tax, if it can be considered a classification at all, is territorial and nothing but territorial. This cannot, under any authority cited, constitute a valid mode of classification.

■ Under the foregoing rulings, which deal only with one of the attacks made on the validity of the act, the court did not err in overruling the county's demurrer to the petition, or in sustaining the demurrer to the county's answer, insofar as the order relates to the specific grounds herein dealt with; the rulings on the specific points indicated being the only judgments made or included in this opinion.

*Judgment affirmed. All the Justices concur, except Duckworth, P. J., who concurs in the ruling in the first division of the opinion, but dissents from the ruling in the second division, and from the judgment; and Wyatt, J., who took no part in the consideration or decision of this case.*