NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: October 15, 2025

S25A0555.  HOMEWOOD ASSOCIATES, INC. et al. v. UNIFIED GOVERNMENT OF ATHENS-CLARKE COUNTY.

WARREN, Presiding Justice.

This is the second challenge brought by Homewood Village, LLC in this Court alleging that the stormwater utility charge imposed by the Unified Government of Athens-Clarke County ("ACC") is an unconstitutional tax.[1]  In the first case, this Court held that ACC's stormwater utility charge is "a fee and not a tax."  See *Homewood Village, LLC v. Unified Government of Athens-Clarke County*, 292 Ga. 514 (2013) (*Homewood I*).  That holding squarely

---

[1] As explained further below, this charge is established by the Stormwater Management and Stormwater Utility Ordinances adopted by ACC in 2004.  See Stormwater Management Ordinance adopted June 1, 2004 (codified as amended at Athens-Clarke County, Ga. Code of Ordinances ch. 5-4, §§ 5-4-1 to 5-4-27); Stormwater Utility Ordinance adopted Dec. 7, 2004 (codified as amended at Athens-Clarke County, Ga. Code of Ordinances ch. 5-5, §§ 5-5-1 to 5-5-12).

applies to Appellants' claim in this case that ACC's stormwater utility charge is a tax that violates the taxation uniformity provision of Georgia's Constitution, which requires that "all taxation shall be uniform." Ga. Const. of 1983, Art. VII, Sec. I, Par. III(a). And we decline the invitation extended by Homewood Village and the other appellants in this case to overrule *Homewood I*.[2] Because we conclude that the stormwater utility charge imposed by ACC is not a tax, we also conclude that the taxation uniformity provision does not apply to it.

We also reject the additional arguments made by Homewood Village and the other appellants that the stormwater utility charge constitutes an unconstitutional taking under the Georgia and United States Constitutions and that the trial court failed to properly apply the summary judgment standard. Thus, we affirm

[2] Whereas ACC and Homewood Village were the only parties involved in *Homewood I*, Homewood Village is joined in this case by eight other parties who were not part of the first case, including Homewood Associates, Inc. Specifically, Appellants are four corporations, four limited liability companies, and one individual, all of whom own developed commercial or residential properties and are subject to the stormwater utility charge. We refer to these parties collectively as Appellants.

the trial court's grant of summary judgment to ACC.

1.   (a) The following facts are undisputed. Pursuant to the Clean Water Act of 1972, 33 USC § 1251 et seq., the Environmental Protection Agency ("EPA") regulates nonpoint source pollution, including stormwater runoff,  to "provide[ ] for the protection and propagation of fish, shellfish, and wildlife and . . . for recreation in and on the water."  33 USC § 1251.  ACC operates a municipal storm sewer system, which collects, transports, and discharges stormwater runoff. Stormwater runoff is often heavily polluted, so the Clean Water Act and its implementing regulations require operators of separate storm sewer systems like ACC to obtain a National Pollutant Discharge Elimination System ("NPDES") permit before discharging stormwater runoff into navigable waters.   These permits require local governments to minimize the pollutants in stormwater runoff to the maximum extent practicable.   ACC is required to maintain an NPDES permit for nonpoint source pollution discharged into open waterways in the County.

From approximately 1992 to 2005, ACC funded its stormwater

3

management program from general revenue funds—that is, through property taxes. In 2003, the federal government imposed a requirement on ACC to meet stricter guidelines for the management of stormwater runoff. ACC began to investigate the possibility of establishing a stormwater utility with a fee to fund "the existing and future stormwater management needs" of the County. See Ga. Const. of 1983, Art. IX, Sec. II, Par. III(a)(6) (authorizing local governments to "provide the following services: ... Storm water and sewage collection and disposal systems"), (d) ("[T]he General Assembly shall act upon the subject matters listed in subparagraph (a) of this Paragraph only by general law.").

On June 1, 2004, ACC adopted a Stormwater Management Ordinance to regulate stormwater runoff in the County. See Stormwater Management Ordinance adopted June 1, 2004 (codified as amended at Athens-Clarke County, Ga. Code of Ordinances ch. 5-4, §§ 5-4-1 to 5-4-27). Later that month, this Court issued its decision in *McLeod v. Columbia County*, 278 Ga. 242 (2004), which involved a Columbia County stormwater-management ordinance

4

that created a stormwater utility funded by monthly stormwater charges paid by owners of developed property based on the amount of impervious surface area on their property. See *McLeod*, 278 Ga. at 242. This Court held, among other things, that the Columbia County stormwater utility charge was not a tax and therefore rejected the property owners' claim that the ordinance imposed a non-uniform tax in violation of the taxation uniformity provision. See id. at 243–45. Six months later, in December 2004, ACC adopted a Stormwater Utility Ordinance that created a stormwater utility and established a funding formula, a fee structure, and an enterprise fund to pay for ACC's stormwater management program, including anticipated and unanticipated future capital needs. See Stormwater Utility Ordinance adopted Dec. 7, 2004 (codified as amended at Athens-Clarke County, Ga. Code of Ordinances ch. 5-5, §§ 5-5-1 to 5-5-12).

ACC's Stormwater Utility Ordinance contains detailed findings, including the following:

Improper management of stormwater runoff may cause

erosion of lands, threaten businesses and residences, and other facilities with water damage and may create environmental damage to the rivers, streams and other bodies of water within and adjacent to [the County]. ...

Proper management of stormwater is a key element of having clean water with adequate assimilative capacity for treated wastewater discharges and adequate potable drinking water that are essential support existing and future development in [ACC]. ...

It is practical and equitable to allocate the cost of stormwater management among the owners of properties in proportion to the long-term demands the properties owned impose on [ACC's] stormwater management services, systems and facilities which render or result in services and benefits to such properties and the owners thereof. ...

A schedule of stormwater utility service charges based in part on the area of impervious surface located on each property is the most appropriate and equitable means of allocating the cost of stormwater management services, systems and facilities throughout [the County]. ...

The area of impervious surfaces on each property is the most important factor influencing the cost of the stormwater management services, systems and facilities provided by [ACC] or to be provided by [ACC] in the future, and the area of impervious surfaces on each property is therefore the most appropriate parameter for calculating a periodic stormwater service charge.

ACC Code of Ordinances § 5-5-2(c), (h), (r), (u), (w).

The Stormwater Utility Ordinance imposes a stormwater utility charge, which the ordinance calls a "fee," on all owners of developed property in the County. The stormwater utility charge has three components: (1) a "base charge," (2) a "quantity charge," and (3) a "quality charge." The base charge is intended to cover the annual administrative and management costs of the stormwater utility. The quantity charge is based on the amount of impervious surface area on the property and its land-use classification, which affect the volume and rate of stormwater runoff. The quality charge is based on the water quality land-use classification of the property, which reflects differences in the level of services that ACC must provide to treat or compensate for the types of pollutants contained in stormwater runoff from different types of properties.

The Stormwater Utility Ordinance exempts from the stormwater utility charge certain developed properties, including public and private roadways and sidewalks. In addition, "credits" are available to owners of developed property to reduce the quantity charge and the quality charge components of the stormwater utility

7

charge for parcels of property with onsite stormwater management and treatment facilities that meet certain requirements. Owners of undeveloped property do not pay ACC's stormwater utility charge.

Stormwater utility charges generate revenue to pay for flood-prevention measures, minimization of water pollution, and compliance with federal law. Funds not expended in the year calculated and collected are placed in a capital reserve account that the County maintains and manages to address needs that arise, such as repair, construction, and replacement of systems and facilities related to the stormwater utility.

(b) The procedural history of this case is extensive. In 2010, ACC filed a complaint against appellant Homewood Village to recover years of delinquent stormwater utility charges. Homewood Village filed a counterclaim for a declaratory judgment that the stormwater utility charge was unconstitutional, because the charge was a tax rather than a fee, the tax was not uniform, and the charge therefore violated the taxation uniformity provision of the Georgia Constitution. The trial court granted summary judgment to ACC on

8

Homewood Village's taxation uniformity provision claim, and Homewood Village appealed. In 2013, this Court held, among other things, that ACC's stormwater utility charge is a fee rather than a tax and that the trial court therefore correctly granted summary judgment to ACC on Homewood Village's taxation uniformity provision claim. See *Homewood Village I*, 292 Ga. at 514–15. Homewood Village paid the judgment for delinquent stormwater utility fees.

Several of the appellants in this case, including Homewood Village, then filed a complaint in federal district court alleging that ACC's stormwater utility charge is an unconstitutional tax, and that by collecting it, ACC was violating their rights under the Takings Clause of the Fifth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution. Citing comity concerns, the district court abstained from reaching the merits of the constitutional claims and instead dismissed the case without prejudice. See *Homewood Village, LLC v. Unified Gov't of Athens-Clarke County*, No. 3:15-CV-

9

23, 2016 WL 1306554, at *3 (MD Ga. Apr. 1, 2016). That decision was later affirmed. See *Homewood Village, LLC v. Unified Gov't of Athens-Clarke County*, 677 FApp'x 623, 624–25 (11th Cir. 2017).

On April 1, 2016—the same day that the district court dismissed the federal lawsuit—ACC filed a lawsuit against Homewood Associates, Inc., in the Magistrate Court of Athens-Clarke County to recover delinquent stormwater utility charges. Several months later, Homewood Associates filed an answer and counterclaim for declaratory judgment and injunctive relief. Homewood Associates then moved to transfer the case to superior court; ACC consented; and the case was transferred to the Superior Court of Athens-Clarke County (the "trial court"). In December 2017, Appellants (other than Homewood Associates but including Homewood Village) filed a complaint in the trial court for damages and declaratory and injunctive relief against ACC asserting, among other things, that ACC's stormwater utility charge violates their rights under the taxation uniformity provision of the Georgia Constitution and the Takings Clause of the Fifth Amendment.

10

Appellants and ACC jointly moved to consolidate the December 2017 lawsuit against ACC with ACC's lawsuit against Homewood Associates that had been transferred to the trial court, and the trial court consolidated the two cases for the purposes of discovery and trial. Several rounds of discovery took place from 2018 to 2022.

In July 2022, ACC filed a motion for summary judgment, and Appellants filed a motion for partial summary judgment. Homewood Associates later filed an amended counterclaim, and on the same day, Appellants (with the exception of Homewood Associates), filed a First Amended Complaint. The filings added claims seeking a declaratory judgment that, among other things, all sums collected by ACC in excess of the costs of the stormwater utility constitute uncompensated takings in violation of the Takings Clauses of the Fifth Amendment and the Georgia Constitution. In January 2023, ACC filed a supplemental motion for summary judgment, and Appellants later filed a second motion for partial summary judgment and a motion to strike the affidavit of Hector Cyre, one of ACC's expert witnesses.

In July 2024, the trial court entered an order granting ACC's motion for summary judgment and denying Appellants' motion for partial summary judgment. Because Appellants ultimately did not dispute ACC's mathematical calculations of the fees owed, the trial court entered a Final Order requiring Appellants to pay ACC sums ranging from less than $1,000 to more than $200,000 each. Appellants filed a timely notice of appeal.[3]

2.   Appellants contend that ACC's stormwater utility charge is a non-uniform tax and therefore the ACC ordinances imposing it violate the taxation uniformity provision of the Georgia Constitution. See Ga. Const. of 1983, Art. VII, Sec. I, Par. III(a) ("All taxes shall be levied and collected under general laws and for public purposes only. [Subject to specified exceptions not applicable here,] all taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."). "Like statutes, ordinances are presumed to be constitutional," and the burden of proving a constitutional violation rests on the party

_____

[3] This case was orally argued on April 15, 2025.

12

raising the challenge. *Rockdale County v. U.S. Enterprises, Inc.*, 312 Ga. 752, 761–62 (2021).

The trial court ruled that Appellants failed to show that ACC's stormwater utility charge violated Georgia's taxation uniformity provision. In reaching this conclusion, the trial court relied on *Homewood I*—and with good reason. In *Homewood I*, Homewood Village argued that ACC's stormwater utility charge is an unconstitutional tax. In this case, Homewood Village (and additional appellants) make the same argument—even though this Court squarely held in *Homewood I* that ACC's stormwater utility charge is "a fee and not a tax." See *Homewood I*, 292 Ga. at 514–15. Appellants contend, however, that *Homewood I* does not control in this case and should be overruled. We reject this argument.[4]

---

[4] In reaching its decision denying Appellants' challenge based on the taxation uniformity provision, the trial court also relied on *McLeod*, in which this Court decided a taxation-uniformity-provision challenge to a stormwater utility charge imposed by Columbia County. See *McLeod*, 278 Ga. at 242. Appellants argue that the trial court erred by relying on *McLeod*, making the same arguments about *McLeod* that they make about *Homewood I*. Because we conclude that *Homewood I* squarely governs this case and decline to overrule it, we need not decide whether any of Appellants' attempts to distinguish *McLeod* from this case are availing, and we decline the invitation to reconsider *McLeod*.

13

In *Homewood I*, this Court in 2013 considered, among other things, a challenge to the very same ACC stormwater utility charge at issue in this case. In that case, we recognized that "[t]he dispositive issue in th[e] appeal [was] whether the [stormwater utility charge] adopted by [ACC] impose[d] a permissible fee rather than an unconstitutional tax," and we held that ACC's ordinances establishing the charge "impose[d] a fee and not a tax." 292 Ga. at 514. In explaining this conclusion, we emphasized that the ACC Stormwater Utility Ordinance

> (1) establishes a Stormwater Utility and ... imposes a utility charge for the stormwater management services; (2) [the charge] applies to residential and non-residential developed property, but not to undeveloped property, which actually contributes to the absorption of stormwater runoff[,] ... and the cost of the stormwater services is properly apportioned based primarily on horizontal impervious surface area; and (3) the properties charged receive a special benefit from the funded stormwater services, which are designed to implement federal and state policies through the control and treatment of polluted stormwater contributed by those properties.

Id. at 515 (cleaned up). We also noted that the Stormwater Utility Ordinance "allows property owners to reduce the amount of the

14

charge by creating and maintaining private stormwater management systems ... and it does not permit the imposition of a lien directly against the property of those who fail to pay the utility charge," which "further underscores the notion that [ACC's Stormwater Utility] Ordinance imposes a fee and not a tax."  Id. (cleaned up).

As in *Homewood I*, the "dispositive issue" in this case is whether ACC's stormwater utility charge is a fee rather than a tax, which would be subject to the taxation uniformity provision.  See Ga. Const. of 1983, Art. VII, Sec. I, Par. III (requiring that "[a]ll *taxes* shall be levied and collected under general laws and for public purposes" and "all *taxation* shall be uniform" (emphasis added)).  Importantly, however, Appellants do not allege that there have been any changes to ACC's stormwater utility charge since *Homewood I*.  And they posit a facial challenge to the legal nature of the stormwater utility charge—that is, whether the charge is a tax or not a tax.  That question is the very same question we answered in *Homewood I*.

Resisting the conclusion that *Homewood I* controls, Appellants contend that *Homewood I* should not apply to this case because "the record here is materially different from that in … *Homewood I*." They specifically focus on the question of "special benefit," arguing that "the record evidence here demonstrates" that Appellants receive no special benefit from ACC's stormwater utility ordinance. Compare *Homewood I*, 292 Ga. at 515 (concluding that "the properties charged receive a special benefit from the funded stormwater services, which are designed to … control and treat[ ] polluted stormwater contributed by those properties"). However, *Homewood I*—concluding that ACC's stormwater utility ordinance was "much like the Ordinance at issue" in *McLeod*—relied on the holdings in *McLeod* and determined as a matter of law that "the properties charged receive a special benefit from the funded stormwater services." *Homewood* I, 292 Ga at 515 (quoting *McLeod*, 278 Ga. at 244). Given that *Homewood I* determined as a matter of law that the payors of ACC's stormwater utility charge receive a special benefit, and that the stormwater ordinance at issue in this

appeal is the same as in *Homewood I,* the holding of that case controls in this case, irrespective of any differences in the record evidence.

The remainder of Appellants' arguments about *Homewood I* are essentially arguments that *Homewood I* was wrong about the ordinance being a fee and not a tax. But we do not reach those arguments because principles of stare decisis warrant retaining *Homewood I*, even if some of us doubt the correctness of our holding in *Homewood I* that this exact same ordinance imposed a fee and not a tax.

When we are asked to reconsider and overrule one of our prior decisions, "stare decisis is the strong default rule." *Wasserman v. Franklin County*, 320 Ga. 624, 645 (2025) (cleaned up).

> Ours is a system of precedent, built on the premise, if not a promise, that future cases will be decided like similar past cases. Sticking to our precedent promotes a system of equal treatment under the law rather than one of arbitrary discretion. Such a system not only yields a body of law that is more stable, predictable, and reliable: it is also the only kind of system that is consistent with the rule of law.

Id. (punctuation and citations omitted). We have declined invitations to reconsider precedent when the party seeking such reconsideration has failed to show that our precedent was "clearly wrong." *Stephens v. State of Ga.*, 321 Ga. 651, 658 (2025). See also *Davis v. Penn Mut. Life Ins. Co.*, 198 Ga. 550, 552 (1944) ("A decision concurred in by the entire bench after argument and careful consideration, and followed in other cases, will not readily be overturned, unless clearly erroneous." (punctuation omitted)). And we will not overrule precedent simply because we "might be impressed with the force of [the appellants'] arguments if the constitutional question presented were now one of first impression." *Fleming v. Rome*, 130 Ga. 383, 384 (1908). See also *Etkind v. Suarez*, 271 Ga. 352, 357 (1999) (declining to overrule a controlling precedent—despite noting that "reasonable minds could and did differ" and indicating that the Court had some "disagreement … with its analysis"—because the Court was not "writ[ing] on a blank slate").

18

Applying those considerations here, we note that this Court decided *Homewood I* in 2013.[5] The relevant legal circumstances are the same now as they were in 2013 when Homewood Village litigated *Homewood I* and this Court decided that ACC's stormwater utility charge is a fee and not a tax. And *Homewood I* implicates strong reliance interests: ACC's stormwater utility charge was adopted six months after this Court issued *McLeod* and held that a charge of this kind was not a tax. See *McLeod*, 278 Ga. at 242–45. See also *Savage v. State*, 297 Ga. 627, 647–48 (2015) ("There is nothing wrong with [a county relying on prior decision of this Court]: local governments, businesses, and individuals are entitled to rely on our precedents, particularly in organizing their contractual and financial affairs."). In sum, notwithstanding the doubts some of us may have about the correctness of *Homewood I*'s analysis regarding whether ACC's stormwater utility charge is a fee, that decision was

---

[5] *Homewood I* is over a decade old and "though we have overruled even older cases when other considerations of stare decisis counseled in favor of doing so," *Homewood I*'s age "does not weigh in favor of its overruling." *Cooper Tire & Rubber Co. v. McCall*, 312 Ga. 422, 435 (2021).

not so "clearly wrong" that considerations of correctness outweigh other considerations such as the similarity of the legal claims and of the parties between this case and *Homewood I*, and the reliance interests at stake in making government decisions. See *Stephens*, 321 Ga. at 658.

We therefore follow *Homewood I* in this case and conclude that ACC's stormwater utility charge is a fee that is not subject to the taxation uniformity provision in Georgia's Constitution. See Ga. Const. of 1983, Art. VII, Sec. I, Par. III(a).

3. Appellants next argue that the trial court erred in granting summary judgment in favor of ACC on Appellants' claim that ACC's stormwater utility charge violates the Georgia and United States Constitutions because it constitutes a taking by the government without just compensation. See Ga. Const. of 1983, Art. I, Sec. III, Par. I(a) ("Except as otherwise provided in this Paragraph, private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid."), (b) ("When private property is taken or damaged by the state

or the counties or municipalities ... for any ... public purposes as determined by the General Assembly, just and adequate compensation therefor need not be paid until the same has been finally fixed and determined as provided by law ... ."); U.S. Const. Amend. V ("[P]rivate property [shall not] be taken for public use, without just compensation.").[6] This argument fails.

(a) First, Appellants have failed to offer any argument that we should analyze their claim based on the Georgia Constitution differently from their claim based on the federal Constitution. In their initial brief, Appellants cite no authority interpreting the Georgia Constitution's Takings Clause, and they make no argument that their claim would be analyzed differently under the Georgia rather than United States Constitution.[7] The most Appellants do to

---

[6] We will refer to these constitutional provisions as "Takings Clauses."

[7] In their amended initial brief, Appellants cite two Georgia cases in this enumeration, neither of which decides a claim based on Georgia's Takings Clause. See *Jekyll Island-State Park Auth. v. Jekyll Citizens Ass'n*, 266 Ga. 152, 153 (1996) (holding that a sentence in a statute providing for fees related to fire service violated constitutional due process requirements because it was "vague and indefinite" and holding that the unconstitutional sentence could be severed because without that sentence, the amount of the fees "will not be

21

advance their argument specific to the Georgia Constitution is, in their reply brief, point to a concurrence saying that Georgia's Takings Clause *may* be broader (but not deciding that it is, let alone applying a meaning different from the federal Takings Clause). See *Diversified Holdings, LLP v. City of Suwanee*, 302 Ga. 597, 615 (2017) (Peterson, J., concurring) (observing that "[t]he text of [Georgia's] Just Compensation Clause appears broader than the federal Takings Clause," but "leav[ing] . . . for another day" the question of whether the two clauses should be interpreted the same, because no party "raised or briefed such issues," which "would require our careful consideration of text, context, and history").[8]  It is Appellants' burden to explain why the stormwater utility charge

---

unlimited, because the Authority cannot charge fees which substantially exceed the cost of the services," relying on Georgia precedent unrelated to the Takings Clause); *Jones v. City of Atlanta*, 320 Ga. 239, 244–45 (2024) (noting that the plaintiff filed, among other claims, "claims seeking damages for violations of the Due Process and Takings Clauses found in the United States and Georgia Constitutions," but vacating and remanding the trial court's ruling on those claims because the court "failed to correctly apply the standard applicable to motions for judgment on the pleadings").

[8] Moreover, Appellants appear to suggest that the burden of explaining the distinction, if any, between the Georgia and federal Takings Clauses belongs to ACC, but it does not.  See *Rockdale County,* 312 Ga. at 761–62.

22

is unconstitutional under the Georgia Constitution, and why (as they claim) the Georgia constitutional standard deviates from the federal constitutional standard. See *Rockdale County,* 312 Ga. at 761–62. Because they have not, "we consider [their] claim only through the analytical lens of the federal … clause." *Morrell v. State*, 318 Ga. 244, 248 n.5 (2024). See also, e.g., *Ellington v. State*, 314 Ga. 335, 342 (2022) ("Despite citing the Georgia Constitution's Confrontation Clause, [Appellant] makes no argument that the Confrontation Clause contained in … the Georgia Constitution should be construed differently than the parallel provision contained in the … United States Constitution. Therefore, we decline to consider in this case whether the relevant provision in the Georgia Constitution should be construed differently than the federal provision.").

(b) As to Appellants' claim based on the federal Takings Clause, it fails. Appellants contend that ACC's stormwater utility charge is an uncompensated taking in violation of the Takings Clause because, as they argue, the fee is not based on a special

23

benefit given to the payors or the county's need, and because it is not based on a "voluntary decision to receive services."

The first basis for Appellants' argument is unavailing. As explained above, *Homewood I* held that ACC's stormwater utility charge *does* provide a special benefit to the payors, and we have already declined to overrule *Homewood I*. See *Homewood I*, 292 Ga. at 515 (holding that "the properties charged receive a special benefit from the funded stormwater services, which are designed to ... control and treat[ ] polluted stormwater contributed by those properties"). *Homewood I* also held that "the cost of the stormwater services is properly apportioned based primarily on horizontal impervious surface area," 292 Ga. at 515 (cleaned up), a holding that supports the Court's finding that the fee is tied to the special benefit provided. And, as explained above, the revenue generated by the stormwater utility charge is used by ACC only to pay for stormwater management services.

The second basis for Appellants' argument likewise fails. On that score, Appellants fail to cite any authority showing that a fee of

this type—one that is linked to the payor's use of a government service or utility—constitutes a taking if it is not based on a voluntary decision to receive services. Instead, Appellants cite six United States Supreme Court cases that do not address a Takings Clause challenge to a fee of the type at issue here. See *Village of Norwood v. Baker*, 172 US 269, 278–79, 297 (1898) (addressing a challenge based on the federal Takings Clause to a "special assessment" levied by the government for the improvement of adjacent land and holding that to the extent the special assessment exceeded the "special benefits accruing to the abutting property," it was a taking of "private property for public use without compensation");[9] *Myles Salt Co. v. Bd. of Comm'rs of Iberia & St. Mary Drainage Dist.*, 239 US 478, 485 (1916) (concluding that it was "an abuse of power and an act of confiscation" to include property within a certain taxation district that "has the special purpose of the improvement of particular property" when that property "is not and

---

[9] This Court has differentiated between this kind of "special assessment" and taxes or fees. See *City of Winder v. Barrow County*, 318 Ga. 550, 562 (2024); *Hayden v. City of Atlanta*, 70 Ga. 817, 822–23 (1884).

cannot be benefited directly or indirectly"); *Nat'l Cable Television Ass'n v. United States*, 415 US 336, 342–43 (1974) (considering whether a charge imposed by the Federal Communications Commission was an authorized fee or an unauthorized tax and noting that "[t]he phrase 'value to the recipient' is, we believe, the measure of the authorized fee"); *Dolan v. City of Tigard*, 512 US 374, 391–95 (1994) (holding that requiring a dedication of property to public use as a condition of the grant of a variance permit violated the federal Takings Clause because the required dedication was not "related both in nature and extent to the impact of the proposed development"); *Sheetz v. County of El Dorado*, 601 US 267, 276–79 (2024) (holding that *Dolan*'s test for determining if a permit condition is an unconstitutional taking can apply to a permit condition that is a monetary charge prescribed by the legislature).[10]

---

[10] Appellants also cite one case to support their argument that if the ACC stormwater utility charge is a tax, it violates the federal Takings Clause. See *Tyler v. Hennepin County*, 598 US 631, 647 (2023) (holding that the county committed an unconstitutional taking when it sold the plaintiff's property for unpaid taxes and then retained the excess proceeds from the sale after the payment of all taxes, penalties, and interest). For the reasons discussed above,

None of these cases indicates that a fee based on the provision of a service—even assuming it is not based on fully voluntary participation—will constitute a taking. And such an argument is firmly refuted by the Court's emphasis in *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 US 595 (2013), on the longstanding principle that "[i]t is beyond dispute that taxes and user fees are not 'takings.'" Id. at 615 (cleaned up). Notably, *Koontz* dealt with the same type of charge raised in *Dolan* and *Sheetz*—a monetary or property-related condition that a government entity imposes as a requirement for a permit—and *Koontz* took pains to differentiate that kind of charge from a tax or user fee. 570 US at 615–17 (explaining that the holding in *Koontz* as to monetary permit conditions "does not affect the ability of governments to impose property taxes, user fees, and similar laws and regulations that may impose financial burdens on

---

we hold that ACC's stormwater utility charge is not a tax. But in any event, *Tyler*—which dealt with the government retaining funds over the amount of tax due—is factually and legally distinguishable.

property owners").[11] Thus neither *Sheetz* nor any of the other cases Appellants cite support their contention that ACC's stormwater utility charge is an unconstitutional taking. Because Appellants' Takings Clause claim fails, we conclude that the trial court correctly granted summary judgment to ACC on that claim.

4. Finally, Appellants contend that the trial court improperly resolved disputed issues of fact in ACC's favor and therefore misapplied the summary judgment standard in granting summary judgment to ACC. We disagree that the trial court erred in applying the summary judgment standard.

---

[11] To the extent Appellants rely on *Dolan* and *Sheetz* to argue that the stormwater utility charge is a taking unless ACC makes an individualized determination quantifying the benefit to each payor, it fails—even assuming we would treat the stormwater utility charge at issue here like a monetary permit condition. Because *Sheetz* expressly declined to decide whether permit conditions could be permissibly imposed on a class of properties without being "tailored with the same degree of specificity as a permit condition that targets a particular development," 601 US at 208, it does not support an argument that an individualized determination of the amount of benefit received or cost created by each specific property is required before a fee may be imposed. See also id. at 284 (Kavanaugh, J., concurring) ("[T]oday's decision does not address or prohibit the common government practice of imposing permit conditions, such as impact fees, on new developments through reasonable formulas or schedules that assess the impact of classes of development rather than the impact of specific parcels of property.").

(a) Appellants assert that the trial court improperly made the following factual findings favorable to ACC, despite conflicting evidence in the record: (1) that undeveloped properties do not contribute to stormwater runoff; (2) that the contribution from roads and sidewalks to stormwater runoff is offset by their channeling of stormwater runoff; and (3) that Appellants receive a special benefit from ACC's stormwater management activities.

As to the first two points, Appellants' characterizations of the trial court's summary judgment order do not match the contents of that order. With respect to the first point, the trial court did not find that undeveloped properties do not contribute to stormwater runoff. To the contrary, the court expressly stated that "most [undeveloped properties] will have some runoff," although "there are undeveloped properties that do not." With respect to the second point, the trial court did not find that the contribution from roads and sidewalks to stormwater runoff is "offset" by their channeling of stormwater runoff. Instead, the court merely recognized that because roads and sidewalks "capture, control and discharge stormwater runoff," they

29

are "considered part of the stormwater collection system."

With respect to the third point, the trial court did not resolve a disputed issue of fact to determine that Appellants receive a "special benefit" from ACC's stormwater management activities. Instead, it properly applied *Homewood I*, in which this Court made a legal determination that the payors of ACC's stormwater utility charge received a special benefit. See *Homewood I*, 292 Ga. at 515.

(b) Appellants also claim that the trial court found that "ACC's experts were more credible than those of [Appellants]"—and thus ran afoul of the summary judgment standard by weighing credibility—but again the trial court's order does not support Appellants' contention.

To support their contention, Appellants point to the first part of footnote 5 of the trial court's order. But in that footnote, the court merely described the dispute between Appellants' experts and ACC's expert; the court did not decide which experts were more credible:

> Plaintiffs rely heavily on the affidavit of one of their experts, Charles B. Wilson, for significant portions of their motion. They cite him some 31 times in their

30

Proposed Order. [ACC's] expert, Hector Cyre, has extensive criticisms of Wilson's expertise and work history which were primarily in dams and sedimentation (Cyre Affidavit, pp. 2 5). Cyre also had significant criticisms of Wilson's opinions, especially with regard to Plaintiffs' contentions regarding credits (Cyre Affidavit, pp. 25-29), whether roads or existing infrastructure can be considered part of a stormwater management system (Cyre Affidavit, pp. 29-30) and the alleged need to allocate the fees and services among the 18 different watersheds in Athens-Clarke County. (Cyre Affidavit, pp. 31-32). Fundamentally, Cyre points out that Wilson demonstrates no experience with local government stormwater management systems. Cyre also criticizes the work of Plaintiffs' experts Alan Perry (Cyre Affidavit, pp. 35-41), and Nancy O'Hare. (Cyre Affidavit, pp. 32-34).

Appellants also claim that the court erred by relying on the affidavit of Hector Cyre in granting summary judgment to ACC on Appellants' constitutional claims. But that contention fails because the trial court expressly disclaimed any reliance on the Cyre affidavit in granting summary judgment to ACC:

Based on the briefing initially submitted, the parties informed the Court that consideration of Plaintiffs' challenge to Cyre's opinions would not be necessary to decide the motions for summary judgment. After the initial oral argument was suspended, [ACC] informed the Court that it would be relying on Cyre's opinions, presumably because Plaintiffs raised arguments at oral argument not clearly articulated in their briefs. While *the*

31

*Court does not rely on Cyre's opinions in granting [ACC's] motion for summary judgment*, it cannot ignore this record evidence in considering Plaintiffs motion for partial summary judgment, especially since [ACC] informed the Court and the Plaintiffs of the need.

(Emphasis added.) Accordingly, Appellants' contention that the trial court misapplied the summary judgment standard fails.

*Judgment affirmed. All the Justices concur.*

PETERSON, Chief Justice, concurring.

I join the Court's opinion holding that stare decisis warrants retaining *Homewood I*'s determination that the stormwater ordinance at issue imposes a fee and not a tax. I write separately to make two points. First, I have serious concerns about our historic treatment of Georgia's constitutional protections of taxpayers. And second, charges like the one at issue here may best be characterized as taxes and still be permissible, because it seems likely that they can be structured in ways that conform with the Constitution's uniformity requirement.

1. The Georgia Constitution protects taxpayers by limiting the methods and means by which Georgia governments can impose taxes. One such protection is the uniformity requirement. See Ga. Const. of 1983, Art. VII, Sec. I, Par. III(a) (provided that no constitutional exception applies, "all taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax"). This requirement entered the Georgia Constitution in 1868 and has been in every constitution since in

33

similar language.[12] One would think, given the long history of this provision in Georgia's constitutions, that this Court would have enforced this constitutional protection in meaningful ways. But our precedent shows otherwise. Over time, this Court has allowed state and local governments to evade the uniformity requirement by imposing charges that look a lot like taxes but are called something else, like "fees" or "assessments."

At least three different categories of these "fees" and "assessments" have emerged in our caselaw: (1) special assessments for paving or street improvements; (2) special assessments for the creation of drainage systems; and (3) fees for garbage services.

---

[12] The uniformity provision in the 1868 Constitution provided that "taxation on property shall be ad valorem only, and uniform on all species of property taxes." Ga. Const. of 1868, Art. I, Sec. XXVII. The 1877 Constitution changed the language slightly. Ga. Const. of 1877, Art. VII, Sec. II, Par. I ("All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed, within the territorial limits of the authority levying the tax[.]"). The 1945 Constitution removed the "ad valorem" language (at least in its express form in this provision) but kept the uniformity language. See Ga. Const. of 1945, Art. VII, Sec. I, Par. III ("All taxation shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax."). The 1976 Constitution kept this same language. See Ga. Const. of 1976, Art. VII, Sec. I, Par. III. And the 1983 Constitution, which now controls, contains materially identical language. See Ga. Const. of 1983, Art. VII, Sec. I, Par. III(a).

The first category, special assessments for paving or street improvements, appears to be the first carve-out created by this Court to allow charges to avoid constitutional restrictions on taxation. See *Hayden v. City of Atlanta*, 70 Ga. 817 (1884). *Hayden* involved a statute conferring on a municipal corporation the power to impose "assessments" for street grading, paving, and improvements on real estate abutting each side of an improved street. Id. at 821. The statute was challenged as being not *ad valorem* and uniform as required by the Georgia Constitution. Id. at 822. The Court held that this charge was not a tax, but was instead an "assessment" and thus was not required by the Constitution to be *ad valorem* and uniform. Id. at 822–23. The Court justified this assessment-tax distinction on the basis that assessments for improvements are based on a benefit to the abutting property. See id. ("Taxes are different from assessments for local improvements, taxes being burdens upon all persons and property alike, and compensated for by equal protection to all, while assessments are not burdens but equivalents, and are laid for local purposes upon

35

local objects, and are compensated for to some extent in local benefits and improvements, enhancing the value of the property assessed."). This distinction between assessments for street improvements and taxes was upheld consistently by this Court after *Hayden*. See, e.g., *Speer v. Mayor, Etc., of Athens*, 85 Ga. 49, 49 (1890); *City of Atlanta v. First Presbyterian Church*, 86 Ga. 730, 737 (1891); *City of Atlanta v. Hamlein*, 96 Ga. 381, 382–85 (1895); *Brumby v. Harris*, 107 Ga. 257, 258–59 (1899); *Mayor & Aldermen of Savannah v. Knight*, 172 Ga. 371, 374 (1931).

The second category involves assessments for the creation of drainage systems. See *Almand v. Pate*, 143 Ga. 711, 716–17 (1915); *Witherow v. Bd. of Drainage Comm'rs of Powder Springs Creek Drainage Dist. No. 2*, 155 Ga. 476, 476–77 (1923); *Goolsby v. Bd. of Drainage Comm'rs of Cedar Creek Drainage Dist.*, 156 Ga. 213, 213 (1923). The assessments for these drainage systems were imposed on properties that were specially benefitted by the drainage systems. And the Court upheld these assessments against constitutional challenges because, like assessments for street

36

improvements, "[a]ssessments of this character are radically different from ad valorem taxes, and are not taxes within the meaning of the Constitution." *Almand*, 143 Ga. at 716 (citing *Hayden*, 70 Ga. 817; *Speer*, 85 Ga. 49). At first glance, these assessments might appear superficially similar to stormwater charges like the one at issue here. But the drainage system cases involved charges only on properties that were specially benefitted from the drainage systems, not on property owners of properties (like the case here) that created the need for drainage. So these cases are consistent with the special benefit justification for assessments in a way that stormwater ordinances may not be.

The third category involves fees or assessments for services removing and disposing of trash and garbage or cleaning the public streets abutting the property on which the fees were levied. These charges were deemed fees or assessments (and thus not taxes) because they were "merely imposing a fee for special services." *Mayor & Aldermen of City of Milledgeville v. Green*, 221 Ga. 498, 501 (1965). See also *Crestlawn Mem'l Park, Inc. v. City of Atlanta*, 235

37

Ga. 194, 194 (1975) (upholding a "sanitary service charge" for the "cleaning of the public streets abutting appellant's property" because the "assessments … are not taxes"); *Levetan v. Lanier Worldwide, Inc.*, 265 Ga. 323, 324 (1995) ("These sanitation assessments are not taxes within the meaning of our Constitution but rather charges for services rendered by the county."); *Strykr v. Long County Bd. of Comm'rs*, 277 Ga. 624, 625 (2004) (same); *Mesteller v. Gwinnett County*, 292 Ga. 675, 678 (2013) (solid waste fee is an assessment for services rendered).

The emergence of these categories demonstrates the breadth of the carve-outs in which this Court has allowed charges to avoid constitutional restrictions on taxation. But this Court has not always been consistent in its reasoning for allowing such charges to avoid constitutional limitations on taxes — and our inconsistency has been pronounced with regard to the special-benefit justification. Some cases seized on language in *Speer* (a case that re-affirmed the holding of *Hayden*) stating that the determination of whether there is a benefit to the landowner belongs to the legislature, "and will not

be inquired into by the courts, unless in extraordinary cases presenting a manifest abuse of legislative authority." *Speer*, 85 Ga. at 49; *City of Atlanta v. Johnson*, 191 Ga. 100, 100–03 (1940) (applying this reasoning from *Speer* to uphold an assessment for a new sewer despite the plaintiff's allegation that the new sewer would not benefit her property). But see *City of Atlanta v. Hamlein*, 96 Ga. 381, 382–85 (1895) (finding an assessment for street improvements to be an "extreme[] case" not deserving of deference to municipal authorities as to the existence of a benefit where the property's value was significantly less than the cost of the improvement).

Despite the critical role that the presence of special benefits have played in our decisions deeming charges to be fees instead of taxes, this Court also has held on occasion that the absence of a current special benefit does not make a fee a tax. See *Georgia Power Co. v. City of Decatur*, 181 Ga. 187, 193–200 (1935). See also *Georgia R. & Banking Co. v. Town of Decatur*, 137 Ga. 537, 540–41 (1912); *Neal v. Town of Decatur*, 142 Ga. 205, 205 (1914) (citing *Georgia R.*

*& Banking Co.*, 137 Ga. 537).

In making this determination, this Court made the paradoxical conclusion that although the authority of governments to impose fees and assessments comes from the taxing power, such charges are not subject to the same constitutional restrictions and limitations as taxes. *Georgia R. & Banking Co.*, 137 Ga. at 540; *City Council of Augusta v. Augusta-Aiken Ry. & Elec. Corp.*, 150 Ga. 529, 532 (1920); *City of Brunswick v. Gordon Realty Co.*, 163 Ga. 636, 641–42 (1927).

I have no idea how to reconcile our historic precedent with itself, much less with the constitutional text it purported to interpret and apply.

It was against this backdrop that this Court, in 2004, extended the fee and assessment doctrine to stormwater utility charges. See *McLeod v. Columbia County*, 278 Ga. 242, 242–45 (2004) (holding that a stormwater utility charge was not a tax and thus not subject to the Constitution's uniformity requirement); *Homewood I*, 292 Ga. at 514–15 (holding the same for the ordinance at issue in this case). Given the inconsistencies in our precedent outlined above regarding

the justification for allowing fees and assessments to evade the limitations placed on taxation, I am skeptical that this extension of the fee and special assessment doctrine to the stormwater context was correct. In particular, I see no benefit (such as increased property value or a special service) to the charged properties of the sort that most of our special benefit precedent generally requires. And we should be cautious in extending or maintaining carve-outs that allow Georgia governments to avoid the constitutional limitations that the people placed on governments' power to tax.[13]

But even if our decisions in the late 1800s and early 1900s were wrong, it may be too late to change course now. The assessment-tax distinction has existed in our precedent since at least 1884. To the extent that our precedent has been consistent and definitive on at least some related points, we presume that that consistent and definitive construction was carried forward into subsequent

---

[13] This Court's reluctance to extend the assessment-tax distinction is illustrated by *Bellsouth Telecommunications, LLC v. Cobb County*, 305 Ga. 144, 146–51 (2019), where the Court declined to extend the fee and special assessment doctrine to a 911 charge on telephone services.

41

constitutions, and eventually into our current Constitution. See *Elliott v. State*, 305 Ga. 179, 184 (2019) ("A constitutional clause that is readopted into a new constitution and that has received a consistent and definitive construction is presumed to carry the same meaning as that consistent construction."). The exact contours of that construction remain to be seen. Nevertheless, we need not decide these questions here, because stare decisis principles compel us to retain *Homewood I* even if it was wrong to hold that this particular ordinance imposed a fee and not a tax.

2.     Much of the precedent that I just described was decided in contexts where the parties assumed that if the challenged charge was a tax, it would violate the uniformity requirement (as the Appellants assume here). I'm not so sure. Even if we were to hold that this stormwater ordinance imposes a tax and not a fee, I am not convinced it would violate uniformity under our Constitution (and to the extent that parts of it do violate uniformity, it may be that those parts could be altered to conform).

Our precedent outlines some of the ways a tax may (or may not)

violate the uniformity provision. There generally seem to be two categories of taxes that have been challenged under the uniformity provision of the Georgia Constitution: cases involving taxes on persons (generally taxes on occupation or revenue), and cases involving taxes on property. See *United Cigar Stores Co. v. Stewart*, 144 Ga. 724, 726 (1916) ("All taxation may be divided into two general classes: Taxation on property, and taxation on person, the latter including taxation on occupation.").

With respect to occupation taxes, certain forms of taxation have been deemed not to violate uniformity. These include taxes on occupations that graduate according to the size of the city or county where the business operated. See, e.g., *Wright v. Hirsch*, 155 Ga. 229, 232–43 (1923); *Georgia-Carolina Lumber Co. v. Wright*, 161 Ga. 281, 281, 285–86 (1925); *Brooks v. Harrison*, 171 Ga. 488, 489, 492–93 (1930); *Guerry v. Harrison*, 178 Ga. 669, 669–70 (1934). Permissible taxes also included those that graduate according to the use of certain items or equipment by the business. See *Goodwin v. Mayor & Alderman of City of Savannah*, 53 Ga. 410, 414–15 (1874)

(occupation tax on common carriers that graduated according to the number of horse drays or wagons employed did not violate uniformity); *Davis & Co. v. Mayor & Council of Macon*, 64 Ga. 128, 132–33 (1879) (tax on butchers that was higher on butchers who used wagons did not violate uniformity). Many cases support the proposition that the General Assembly may classify and subclassify occupations for the purpose of taxation, so long as the classification is "reasonable" and "not arbitrary."[14] And in many early cases, this Court distinguished between taxes on property and taxes on occupations and revenue — since taxes on occupations and revenue were considered *not* taxes on property, they were not subject to the *ad valorem* and uniformity requirements in the Constitution.[15]

---

[14] See, e.g., *McGhee v. State*, 92 Ga. 21, 22–27 (1893); *Singer Mfg. Co. v. Wright*, 97 Ga. 114, 114–22 (1895); *Stewart v. Kehrer*, 115 Ga. 184, 189–90 (1902); *City Council of Augusta v. Clark & Co.*, 124 Ga. 254, 258–59 (1905); *Williams v. State*, 150 Ga. 480, 484–85 (1920); *Coy v. Linder*, 183 Ga. 583, 585–88 (1936); *Davison v. F. W. Woolworth Co.*, 186 Ga. 663, 663, 666 (1938); *Forrester v. Edwards*, 192 Ga. 529, 529, 532–34 (1941); *Chanin v. Bibb County*, 234 Ga. 282, 290 (1975).

[15] See, e.g., *Kenny v. Harwell*, 42 Ga. 416, 419–23 (1871); *Burch v. Mayor & Aldermen of Savannah*, 42 Ga. 596, 598–600 (1871); *Bohler v. Schneider*, 49 Ga. 195, 200–01 (1873); *Home Ins. Co. of New York v. City Council of Augusta*, 50 Ga. 530, 543 (1874); *Goodwin*, 53 Ga. 410, 414–15 (1874); *City of Rome v.*

Still within the occupation tax category, a number of our decisions have invalidated taxes as violative of the uniformity provision. This Court generally held that it violated uniformity to exempt businesses within the same class of businesses being taxed. See *Ewing v. Wright*, 159 Ga. 303, 303–04 (1924) ("And where the Legislature, as here, creates by statute a class, upon which it imposes a tax … , but excepts from it a number of persons falling within the classification, the [*ad valorem* and uniformity provision] is violated; and such a violation of the constitutional provision renders the statute void."). See also *Pate v. Foss*, 157 Ga. 579, 582–84 (1924); *Eplan v. City of Atlanta*, 176 Ga. 613, 613–16 (1933); *Elder v. Smith*, 188 Ga. 65, 67–69 (1939).

But some exemptions from occupation taxes have been upheld on one of two grounds. First, a few exemptions were deemed not violative of uniformity because the Court determined that the exempt businesses were in a class different from the class of

*McWilliams & Co.*, 52 Ga. 251, 275 (1874); *Weaver v. State*, 89 Ga. 639, 642–43 (1892); *Hirsch*, 155 Ga. at 233–35 (1923). Note that the current constitution does not contain a general ad valorem requirement for taxation.

businesses being taxed (such that the tax contained permissible classifications, rather than impermissible exemptions). See *Davis*, 64 Ga. at 132 (tax on butchers that exempted farmers selling their own produce and wagons used in delivering milk from farms did not violate uniformity because they were different businesses and thus "different classes of subjects in a scheme of taxation"); *Clark*, 124 Ga. at 258–59 ("[S]imply because they all might be classified in the one general class of lenders of money is no reason why these different occupations might not be arranged in different classes for the purpose of taxation, and a different amount of tax placed upon each."). Second, and perhaps relatedly, some exemptions were upheld because they were "not unreasonable or arbitrary." See, e.g., *Hunter v. Wright*, 169 Ga. 840, 845–46 (1930); *S. Transfer Co. v. Harrison*, 171 Ga. 358, 358–59 (1930); *City of Atlanta v. Georgia Milk Producers Confederation*, 187 Ga. 117, 119 (1938).[16]

---

[16] For exemptions in the property context, see *City of Atlanta v. Spence*, 242 Ga. 194, 197 (1978) (holding that a county ordinance exempting 300 acres or less from taxation of public real property owned by a city outside its territorial limits did not violate uniformity). See also *Atlanta & F.R. Co. v.*

The standard, as mentioned above, for whether classifications and subclassifications violate uniformity is whether they are reasonable and not arbitrary. See, e.g., *Forrester*, 192 Ga. at 532. Most classifications have been held to be reasonable, but this Court has held in at least two cases that certain subclassifications were unreasonable and arbitrary and thus violated uniformity. See *United Cigar Stores Co.*, 144 Ga. at 724–27 (statute imposing a tax "upon every manufacturer of tobacco, and upon every wholesale and retail dealer in tobacco, who redeems, or offers to redeem, any tags or labels sold or distributed or given with tobacco sale" violated uniformity because the classification was "unreasonable and arbitrary"); *F.W. Woolworth Co. v. Harrison*, 172 Ga. 179, 179 (1931) (statute taxing businesses operating over five stores at a rate of $50 per store and not taxing at all businesses operating five stores or less violated uniformity because this "classification is arbitrary and

*Wright*, 87 Ga. 487, 489–90 (1891) (holding that uniformity was not violated where five railroad companies were exempted from ad valorem taxation because those charters included provisions limiting their taxation to a certain percentage of income, but other railroad companies were taxed ad valorem).

47

unreasonable").

Finally, some occupation taxes violated uniformity because businesses were taxed based on their location or territorial discrimination. See *Mut. Rsrv. Fund Life Ass'n v. City Council of Augusta*, 109 Ga. 73, 78–79 (1900); *Morgan v. State*, 140 Ga. 202, 204–07 (1913); *Am. Bakeries Co. v. City of Griffin*, 174 Ga. 115, 115–19 (1932); *Fulton County v. Lockhart*, 202 Ga. 878, 881–83 (1947).

The second category of uniformity cases deals with taxes on property. These cases make clear that property of the same class must be taxed uniformly. See, e.g., *City Council of Augusta v. Nat'l Bank of Augusta*, 47 Ga. 562, 563–65 (1873); *Colvard v. Ridley*, 218 Ga. 490, 490 (1962). And many cases have held that real and personal property are considered a single class for purposes of taxation, so if assessments are raised unequally between them, uniformity is violated. See *Griggs v. Greene*, 230 Ga. 257, 266 (1973) ("[T]he Constitution establishes all tangible property (except automobiles and trailers), both real and personal, as a single class for the purpose of taxation, and it commands that all property in

that class must be treated uniformly."). See also *Hutchins v. Howard*, 211 Ga. 830, 830 (1955); *Lott Inv. Corp. v. City of Waycross*, 218 Ga. 805, 808–09 (1963).[17] And state and local governments cannot raise taxes on property by arbitrary means. See *Champion Papers, Inc. v. Williams*, 221 Ga. 345, 346 (1965).

Whether and to what extent the above cases apply to the ordinance at issue in this case remains unclear. It is possible that the stormwater ordinance here may be like the occupation taxes that graduated according to the use of certain items or equipment in the business, and thus the stormwater ordinance would not violate uniformity. See, e.g., *Goodwin*, 53 Ga. at 410–15. But this particular stormwater ordinance includes exemptions for undeveloped property and for all public and private roadways. Under our precedent, these exemptions may make the ordinance violative of the uniformity provision, but it is unclear what standard we should apply in making that determination. If the standard for exemptions

---

[17] But income is not property and thus it does not violate uniformity to tax income and property at different rates. See *Waring v. City of Savannah*, 60 Ga. 93, 100 (1878).

is the same as the standard for subclassifications (i.e., that they be reasonable and not arbitrary), then the exemption in this ordinance for undeveloped property may be reasonable, because undeveloped properties contribute less to stormwater runoff than developed properties. It may be that a county can also exempt *public* streets and sidewalks.[18] But the exemption for *private* streets and sidewalks to me seems less likely to be permissible. If developed properties are the target of the ordinance because of their increased contribution to stormwater runoff, then I can see no reasonable justification for exempting private roadways. But even if this exemption makes the stormwater ordinance violative of uniformity, it is not difficult to imagine a stormwater ordinance without such an exemption which would not violate uniformity. Perhaps in the future Georgia

---

[18] The right to exempt public property from taxation was in past constitutions and has been discussed in our cases. See Ga. Const. of 1877, Art. VII, Sec. II, Par. II; Ga. Const. of 1945, Art. VII, Sec. 1. Par. IV; Ga. Const. of 1976, Art. VII, Sec. I, Par. IV. See also *City of Atlanta v. Spence*, 242 Ga. 194, 196–97 (1978); *Wright v. Fulton County*, 169 Ga. 354, 362 (1929); *Penick v. Foster*, 129 Ga. 217, 222 (1907) ("The Constitution expressly authorizes the exemption of public property."). But this text is not present in the 1983 Constitution. I express no opinion here how that might affect the power to exempt public property from this tax.

governments could focus on crafting charges like those at issue here to conform to uniformity, rather than to try to take them outside all constitutional protection altogether.

I am authorized to state that Justice Bethel joins in this concurrence.